**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>99 Cents Only Stores LLC,<br><br>Post-Confirmation Debtor.[1] | Chapter 11<br><br>Case No. 24-10721 (JKS)<br><br>**Objections due by: September 4, 2026 at 4:00 p.m.**<br>**Hearing Date: To be Determined**<br><br>**Re: D.I. 465, 470** |

# REPLY IN SUPPORT OF THE MOTION OF OLGA NUNEZ FOR RELIEF FROM THE AUTOMATIC STAY, THE PLAN INJUNCTION AND THIS COURT'S ORDER OF DECEMBER 5, 2025

Ms. Nunez[2], by and through her undersigned counsel, files this reply (the "Reply") in support of the *Motion for Olga Nunez for Relief from the Automatic Stay, the Plan Injunction and the Court's Order of December 5, 2025* (D.I. 465 the "Motion") and in response to the Objection of Safety National to the Motion (the "Objection", D.I. 470)

## INTRODUCTION

Safety National is the only party which objects to the Motion. Notably, the Trust has *not* objected. Safety National addresses only two of the issues raised in the Motion—the authority of the Court to issue injunctions and excusable neglect. Otherwise, it relies on this Court's Order and Opinion in the *Chan* matter to argue that the Motion should be denied and that Ms. Nunez has been permanently barred from seeking to recover on insurance proceeds. But this Court's Opinion in the *Chan* matter expressly provides that the Court has not enjoined personal injury claimants from seeking to recover on insurance—undermining Safety National's position.

[1] The Post-Confirmation Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is 99 Cents Only Stores LLC (1605). The Post-Confirmation Debtor's mailing address is META Advisors, LLC, 3 World Trade Center, 67th Floor, New York, NY 1000.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

In the event, however, that Safety National's interpretation of this Court's Opinion in Chan is correct—that is, that this Court's order of December 5, 2025 (D.I. 284, the "Procedures Order")[3] permanently enjoined Nunez from seeking to recover insurance proceeds, then Nunez should be granted relief from such Order for the reasons stated in the Motion, namely:

- To the extent that paragraph 13[4] of the Procedures Order is based on the premise that the disallowance of Ms. Nunez's claim as untimely extinguished her claim against the Debtors, then the Order is based on clear error and is contrary to black letter law that disallowance of a claim as untimely does not make the claim disappear. Safety National has failed to address this issue and hence has waived same.
- Notice of the motion was deficient because the relief as to disallowed claims appeared only in the proposed order—not in the title of the motion, the notice of motion, the body of the motion, or the *ad damnum* clause. Parties should not be able to sneak in *claim dispositive* relief by burying same in a proposed order. Safety National fails to address this issue and has hence waived any objection to same.
- The Motion was procedurally defective because the relief sought—a permanent injunction not subject to modification—can only be sought through an adversary proceeding and not a contested matter. Again, Safety National fails to address this issue and has waived same.
- The Motion was not served in accordance with Fed. R. Bankr. R. 7004, as applicable under Fed. R. Bankr. P. 9014, as it was mailed only to counsel for Nunez and not to Nunez herself. Again, Safety ignores this issue and has waived it.

[3] The Chan Opinion (as defined below) defines the "Procedures Order" as the Order Granting Motion of the 99 Cents Creditors' Liquidating Trust for Entry of an Order, Pursuant to 11 U.S.C. §§105(a) and 502(c), Authorizing (I) Fixing Certain Personal Injury Claims Pursuant to the Plan, and (II) Lifting the Plan Injunction to Allow Certain Personal Injury Claimants to Liquidate Claims (D.I. 284). In the Motion, Movant referred to this Order as the Permanent Injunction Order. In this Reply, Movant will use the Court's definition.
[4] The Motion inadvertently referred to this provision as "paragraph 12."

- The Order granting the Motion finally disposed of Nunez's ability to pursue insurance proceeds and hence ran afoul of both the Supreme Court's decision in *Purdue* and the Third Circuit's decision in *McAteer*. Although Safety National addresses this issue generally, the cases it relies on either have nothing to do with insurance proceeds, don't relate to plan injunctions, represent non-binding authority from other circuits, and/or pre-date *Purdue*. Most important, they address circumstances where the debtor itself was opposing the relief because the debtor itself would bear significant out-of-pocket expenses if the relief sought were granted—a fact noticeably absent here.
- Assuming that notice of the relief was sufficient even though it appeared only in the proposed order; that service upon counsel alone was sufficient; that the injunctive relief obtained was properly sought through a contested matter; and that the Court had the authority to deprive Ms. Nunez of her right to pursue insurance proceeds notwithstanding *Purdue* and *McAteer*, Nunez's failure to respond to the procedures motion was due to excusable neglect. The facts are not the same as in *Chan*. In *Chan*, bankruptcy counsel appeared at the hearing on the procedures motion. Here, as stated in the Motion, counsel never even *knew* about the procedures motion. Even more important, however, even if counsel had known about it, there was nothing in the notice of motion or even the motion itself to put counsel on notice that the Trust was seeking to permanently prohibit Nunez from seeking to recover insurance proceeds.

## ARGUMENT

## I. THE CHAN OPINION SUPPORTS NUNEZ'S POSITION

Undersigned counsel confesses that he was not aware of this Court's Opinion dated March 6, 2026 (D.I. 365, the "Chan Opinion") in the matter of Caterina Cux Chan ("Ms. Chan") at the time the Motion was filed. Having now read the Chan Opinion, it appears that the Motion may have been unnecessary. While the Court in the Chan Opinion denied much of the relief sought, at the end of the Chan Opinion, the Court states:

> The Procedures Order, however, also incorporate Section IV.E of the Plan regarding "Insurance Matters" and states, in part:
>
> > This Order is and shall be insurance neutral, neither modifying the coverage obligations of any Insurer (as defined in the Plan) or the Liquidating Trustee, if any, nor modifying or affecting any Claimant's rights, if any, under any Insurance Contract or applicable law. For the avoidance of doubt, all parties' rights, defenses, and arguments are reserved herein, specifically including under Section IV.E. of the Plan, in any Original Court Action.
>
> As set forth in the Order, **any rights Movant has against the insurer are preserved and she is not precluded from pursuing the insurer in state court. The Court lacks subject matter jurisdiction over any state law contract claim Movant may have against the insurer above the SIR. That is a claim between two non-debtors involving state law.**

Chan Opinion at 7 (footnotes omitted) (emphasis supplied).

The language above provides that Ms. Chan is free to pursue insurance proceeds—presumably by naming Debtors as nominal defendants with any recovery limited to applicable insurance. If that was the Court's intent, then paragraph 13 of the Procedures Order would simply mean that a claimant whose claims has been disallowed cannot attempt to obtain an allowed estate claim through a motion for relief from the plan injunction—a truly innocuous "belt and suspenders" provision.

Safety National may be of the view, however, that the above-language only refers to direct claims against the insurer rather than claims that name the Debtors as nominal defendants

for the purpose of collecting applicable insurance. If that were the case, the language in the Chan Opinion cited above is virtually meaningless. Only a handful of jurisdictions in the United States have general direct action statutes.[5] California permits direct actions in certain limited circumstances, such as to collect from the insurer once a judgment is obtained—but does not permit a direct action against the insurer in the first instance. *See generally Roberts v. Home Ins. Indem. Co.,* 48 Cal. App. 3d 313, 317, 121 Cal. Rptr. 862, 864 (1975) (noting that Cal. Ins. Code § 11580 requires policies issued in California to contain a provision permitting a direct action once a judgment has been obtained against the insured).

Moreover, if paragraph 13 of the Procedures Order barred Ms. Nunez from proceeding against the Debtors as nominal parties for the purpose of obtaining insurance recovery, then all of the issues raised in the Motion—the majority of which Safety National does not respond to—remain valid bases to grant Ms. Nunez relief from such Order.

All of the discussion that follows is hence premised on the assumption that Safety National is correct in its interpretation of the Chan Opinion and the Procedures Order. To the extent that the Court concludes that the Procedures Order does not enjoin Ms. Nunez from pursuing Debtors as nominal defendants in order to recover insurance proceeds, then there is obviously nothing for the Court to decide as to that issue.

## II. IT IS BLACK LETTER LAW THAT THE DISALLOWANCE OF A CLAIM AS UNTIMELY DOES NOT AFFECT A CREDITOR'S RIGHTS AGAINST THIRD PARTIES

Safety National does not take issue with black letter law that disallowance of a claim as untimely (or for failure to file a claim at all) does not affect the right of a creditor to recover from a third party, including an insurance carrier. *See Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 180

[5] *E.g.,* Guam [22 GCA Section 183-5=18306] Louisiana [La R.S. § 22:1269]; Puerto Rico [26 LPRA § 2003; 26 LPRA § 2112]; Wisconsin [Wis. Stat. § 632.24]. To be clear, the law in this area is varies greatly among jurisdictions, is riddled with exceptions and is highly context dependent.

(7th Cir. 1994) (holding that disallowance of a creditor's claim was not *res judicata* as to a personal injury claimants "to proceed nominally against a debtor"); *In re SelectBuild Ill., LLC,* No. 09-12085 (KJC), 2015 Bankr. LEXIS 1790, at *24 (Bankr. D. Del. May 28, 2015) (citing *Hawxhurst*, held "a claimant's 'failure to file a proof of claim in reorganization proceedings under Chapter 11 does not bar the claimant from recovering against the debtor's insurers.'"); *In re Hendrix,* 986 F.2d 195, 197 (7th Cir. 1993) (where creditor failed to file a proof of claim, Court, in holding that discharge did not bar suit against debtor nominally to collect insurance, Court states "[b]ut as to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not."); *In re Fernstrom Storage & Van Co.,* 938 F.2d 731, 733 (7th Cir. 1991) ("We agree with the bankruptcy and district courts that IBM's failure to file a claim should not bar it from recovering against Fernstrom's insurers.").

This is consistent with general bankruptcy principles that the discharge of a claim does not cause the claim to vanish--it merely means that the creditor cannot participate in any dividend under the plan. *E.g. First Fid. Bank v. McAteer,* 985 F.2d 114, 118 (3d Cir. 1993) ("While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties."); *In re J & J Pizza, Inc.,* No. 23-1872, 2024 U.S. App. LEXIS 18438, at *7 (3d Cir. July 25, 2024) [NON PRECEDENTIAL] ("confirmation of the plan and eventual discharge of J & J's debt does not enjoin or otherwise restrict D'Agostino from proceeding against J & J to establish its liability for the purposes of collecting from its insurer."); *United States v. Conston, Inc. (In re Conston, Inc.),* 181 B.R. 769, 773 (D. Del. 1995) (citing cases); *In re Weiand Auto. Indus.,* 612 B.R. 824, 860 (Bankr. D. Del. 2020) ("This interpretation of § 524 ensures that insurance companies cannot escape their contractual obligations as a result

of a bankruptcy filing.") *In re Shondel,* 950 F.2d 1301, 1307 (7th Cir. 1991) ("When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required."); *In re Jet Fla. Sys., Inc.,* 883 F.2d 970, 975 (11th Cir. 1989) (in rejecting carrier's argument that it could not be held liable where claimant had failed to file a proof of claim, held "[f]ar from holding that insurers should be protected from liability, one 'court reasoned that the insurance company should not be entitled to gain a benefit that was not intended or in any way computed within the rate charged for its policy.'") (internal citations omitted). For similar reasons, the discharge of a secured creditor's claim does not cause that creditor to lose its *in rem* claim to its collateral. *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor *in personam* -- while leaving intact another -- namely, an action against the debtor *in rem*. ").

Here, the application of this rule implies that the Disallowance Order had no effect—and could have no effect--on Ms. Nunez's ability to recover applicable insurance. While Safety National does not address this issue in the Objection, the Defense Declaration misstates the law to the State Court:

> 9. According to the Bankruptcy Trust counsel, Jason S. Pomerantz, Pachulski Sang Ziehl & Jones LLP, Plaintiff must, at a minimum, possess a valid Proof of Claim to receive any monetary relief in the liquidation of assets or to seek relief from the Bankruptcy Stay/Injunction to prosecute her action in this court. Accordingly, there is nothing for this court to adjudicate.

The Defense Declaration obviously contains multiple levels of hearsay and, in any event, cites no authority for its position other than an alleged, unquoted and undocumented out-of-court

statement of the Trust's counsel. To the extent that this assertion is intended to be a general assertion of bankruptcy law, it is plainly wrong.

As for the Procedures Order, paragraph 13 appears to be premised on the false assumption that the disallowance of a claim as untimely causes that claim to vanish. Paragraph 13 begins with the words "For avoidance of doubt . . ."—suggesting that what follows is redundant or obvious and that this language serves as belt and suspenders. Of course, nothing could be further from the truth. The Disallowance Order had no legal affect upon Nunez's ability to pursue available insurance. It did not cause her claim to disappear.

Given that the disallowance of Nunez's claim was not and could not be a basis for prohibiting her from seeking relief from the Plan Injunction to pursue insurance proceeds, the question is—what was the basis? None has ever been identified.

## III. THE PROCEDURES MOTION DID NOT PROVIDE NUNEZ WITH SUFFICIENT NOTICE OF THE RELIEF SOUGHT

Paragraph 13 of the Procedures Order provides—at least according to Safety National—a permanent injunction against holders of claims disallowed (as tardy or otherwise) from seeking relief from the Plan Injunction to pursue applicable insurance proceeds. Such relief, however denominated, has the identical effect to a third-party release. But that relief is not mentioned in (i) the title of the Procedures Motion; (ii) the notice of the Procedures Motion (iii) the body of the Procedures Motion or (iv) the *ad damum* clause of the Procedures Motion. It is only contained in the proposed order.

Fed. R. Bank. P. 9013(b) provides that "a motion must state its grounds with particularity and set forth the relief or order requested." The Procedures Motion did not comply with this Rule as to the permanent injunction against holders of disallowed claims. No grounds whatsoever are provided for this relief—and as detailed above—there are no such grounds. The

relief is not even mentioned in the body of the motion itself, only in the proposed order where it is falsely characterized as immaterial or self-evident.

Burying claim dispositive relief in a proposed order is inadequate and improper in any court. But in bankruptcy, the issue is particularly acute. Hundreds or even thousands of motions are filed in a typical larger chapter 11 case. The vast majority of such motions have little or no bearing on any individual creditor. If this Court were to hold that notice of this relief was sufficient, it would effectively require every attorney receiving a motion paper to read the entire motion, including the proposed order, to make sure they have not missed anything. There are not enough hours in a day to do this. Moreover, holding that the notice of this relief was sufficient would encourage such practices.

Safety National seems to think that the Court has already effectively decided this issue in the Chan Opinion. But the *Motion For Reconsideration or Alternatively for Clarification of Court Orders Striking Certain Late Filed Claims and Procedures Order for Relief From Plan Injunction* (D.I. 297, the "Chan Motion")—which is all of four pages long and cites no legal authority--did not raise this issue. Hence, it is no surprise that the Chan Opinion does not address whether it is proper to include claim dispositive relief only in a proposed order.

## IV. THE RELIEF SOUGHT IN THE PROCEDURES MOTION HAD TO BE SOUGHT THROUGH ADVERSARY PROCEEDING

According to Safety National, before the Procedures Order was in place, any personal injury claimant had the right to seek relief from the Plan Injunction in order to pursue applicable insurance proceeds. And dozens or hundreds of such claimants have. After entry of the Procedures Order, however, that right was lost as to holders of claims disallowed as tardy—turning the Plan Injunction into a permanent and unmodifiable injunction against obtaining insurance proceeds. Again, the practical impact of this would be to release Safety National from any obligations under its policy with respect to the Nunez claim.

If that is what the Procedures Order means, then the permanent injunction was improperly sought thought a contested matter rather than through an adversary proceeding. *See* Fed. R. Bankr. P. 7001(g). Once again, Safety National does not say a single word about this in its Objection.

The Chan Opinion naturally does not address this issue—because Chan did not raise this issue in the Chan Motion.

## V. THE PROCEDURES MOTION WAS NOT PROPERLY SERVED ON NUNEZ

It is beyond cavil that the Procedures Motion—which sought permanent claim dispositive relief as to the pursuit of insurance proceeds—constituted a contested matter (albeit, an improper one) under Rule 9014. Rule 9014(b)(1) unequivocally requires service of a filing in initiating a contested matter in accordance with Fed. R. Bankr. P. 7004. Rule 7004(b)(1), in turn, requires service by first class mail directed to an individual by mailing a copy to such individual's "dwelling or usual place or abode or whether the individual regularly conducts a business or profession." The Trust did not comply with that rule. Instead, the Trust served the Motion on counsel only. That is insufficient for service of process of a contested matter. *In re Murray,* No. 11-10535, 2013 Bankr. LEXIS 2356, at *3 (Bankr. N.D. Cal. June 10, 2013) ("The mere fact that an attorney signs a proof of claim does not mean the attorney is implicitly authorized to accept service, even when the attorney is named as the recipient of notices; the person so designated is authorized only to receive general notices pursuant to Rule 2002(g)(1)(A), not service pursuant to Rule 7004.").

Again, Safety National does not say one word about this in its Objection. And the Opinion, once again, is silent on this issue, as the Chan Motion did not raise it.

## VI. THE COURT LACKS AUTHORITY TO DISCHARGE SAFETY NATIONAL FROM LIABILITY

Safety National claims there is "ample authority" that permits the Court to employ the Plan Injunction to permanently bar personal injury claimants from seeking to recover applicable insurance. But Safety National cites no such authority. Any such authority would, in any event, run afoul of both the Supreme Court's decision in *Purdue* as well as the Third Circuit's decision in *McAteer*. The cases cited by Safety are distinguishable.

In the case of *In re Town Sports Int'l, LLC,* No. 24-1020, 2024 U.S. App. LEXIS 21797, at *5 (3d Cir. Aug. 28, 2024) [NON PRECEDENTIAL], a creditor with a contract claim against the debtor failed to file a proof of claim and later filed a motion for relief from the automatic stay (treated as a motion for relief from the plan injunction) to liquidate the claim against the debtor. The Bankruptcy Court denied the motion because claimant's only source of recovery was from the debtor itself—the claim was uninsured. Because the claimant had missed the bar date, he had no right to recover from the debtor. Relief from the plan injunction hence served no purpose.

*Town Sports* has nothing to do with the case at bar—here, Nunez does not seek any recovery from the Debtors at all but wishes to proceed against the Debtors nominally so that she can recover applicable insurance.

The issue in *In re Chemtura Corp.,* No. 09-11233 (JLG), 2016 Bankr. LEXIS 4056, at *56 (Bankr. S.D.N.Y. Nov. 23, 2016) was whether the statutory injunction of section 524(a) prohibited certain benzene claimants from pursuing their claims to insurance where the reorganized debtors would be obligated to pay defense costs on a dollar-for-dollar basis. There, the Court held that the claimant was not entitled to pursue his claims because pursuit of such claims necessarily imposed direct costs upon the reorganized debtors. *See also In re Tailored*

*Brands, Inc.,* 2021 Bankr. LEXIS 1375, at *14 (Bankr. S.D. Tex. May 20, 2021) (Section 524(a)'s discharge injunction precluded claimant from forcing Tailored Brands to incur uninsured defense costs or liability.)

Nothing like this is happening here. Nothing distinguishes Ms. Nunez's claim from dozens or hundreds of other personal injury claimants who have obtained relief from the automatic stay and plan injunction. Built into the many orders are provisions to protect the Debtors (or the Trust) from the incursion of costs. *Chemtura* and *Tailored Brands,* in addition to being out-of-circuit, are hence not applicable.

## VII. MOVANT HAS MET THE STANDARD OF EXCUSABLE NEGLECT—AND EASILY

Bearing in mind that the disallowance of Ms. Nunez's claim had no effect—and could have had no effect—on Ms. Nunez's ability to recover insurance proceeds, the only issue presented is whether Nunez's failure to object to the Procedures Motion was due to excusable neglect to the extent that (i) the Procedures Order actually bars Nunez from pursuing insurance proceeds; (ii) notice of the Procedures Motion and the relief sought therein was proper; (iii) the relief sought in the Procedures Motion did not require an adversary proceeding; (iv) service of the Procedures Motion was proper and (v) the Court had authority to permanently enjoin Ms. Nunez from recovering applicable insurance. The Court need not even consider the excusable neglect argument unless the Court were to rule in Safety National's favor on (i) through (v) above.

Preliminarily, as stated in the Motion, State Court Counsel did not have actual knowledge of the Procedures Motion. This may be because the Procedures Motion was never received. It may be because it was received but was lost or mis-routed. But whatever the reason, counsel was not aware of this Motion until the Defense Declaration was received. That fact alone

distinguishes this case from *Chan* where counsel was present during the hearing on the Procedures Motion.

But let's assume, hypothetically, that counsel had actually received the Procedures Motion. Hundreds of motions are filed in bankruptcy cases. Even for bankruptcy practitioners, it is difficult to keep up with them. Practitioners need to be able to rely on the title and notice of a motion. Otherwise, lawyers would be forced to review the proposed order in every fee application to assure nothing prejudicial appeared therein. Even assuming there is such a standard of care (and there is not), failure to read the entire proposed order here would have been (at most) due to excusable neglect. If it was the Trust's intention to permanently enjoin holders of disallowed claims from pursuing insurance recovery, the motion should have had something in bold in the notice. It should not have been buried in the proposed order.

## VIII. SAFETY NATIONAL'S OTHER ARGUMENTS ARE IRRELEVANT OR INCORRECT

### A. The Automatic Stay

Safety National devotes an entire section of the Objection to arguing that the automatic stay is not actually in place. If that is the case, then no relief from stay is necessary.

### B. The Court may Grant Relief from the Procedures Order as to Nunez

The Chan Order is not binding on Nunez. Safety National cites no authority to show otherwise. Nunez was not a party to the Chan Motion nor was there any reason for her to be. Moreover, the Chan Opinion only addresses those issues that Chan raised in the Chan Motion—essentially excusable neglect. But excusable neglect depends on the facts of each individual case.

As for "law of the case", what exactly is Safety National alleging? That is it "law of the case" that the Procedures Motion could validly seek claim dispositive relief mentioned only in a

proposed order? That such relief could be sought through a contested matter? That service under Fed. R. Bankr. P. 7004 was not required? The Chan Opinion says none of these things.

**C. The Procedures Order is a Final Order**

Safety National argues that Nunez does not address whether the Procedures Order is a final order or not. While not stated in so many words, it is beyond cavil that if the Procedures Order means what Safety National says it does (*i.e.* that it forever bars Nunez from recovering insurance proceeds), then it is a final order as it finally and forever disposes of Ms. Nunez's claim to insurance.

**D. Safety National Does not have Standing to Raise Trust Related Issues**

Safety National claims that the Trust will be prejudiced due to administrative costs associated with permitting the Nunez claim to proceed and because Safety National will assert defense costs as an unsecured claim in this case. But the Trust has not objected to the Motion. Safety National is not an agent for the Trust, which is obviously represented by highly competent counsel.

Moreover, Safety National's indemnification claim for reimbursement of defense costs may be a contingent claim for indemnification that should be disallowed under section 502(e). *In re Touch Am. Holdings, Inc.,* 409 B.R. 712, 719 (Bankr. D. Del. 2009) (under the particular facts, held that certain defense costs were disallowed under § 502(e)). And the argument proves too much anyway—co-debtors almost always have contribution or indemnification claims against the debtors. That does not empower the debtor to prevent a creditor from seeking recovery on such claims.

**CONCLUSION**

For all of these reasons, the Motion should be granted, Safety National's Objection overruled, and Nunez permitted to proceed with the State Court Action in order to recover any available insurance.

DATED: September 11, 2026

*/s/ Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Email: loizides@loizides.com

*Counsel for Olga Nunez*