**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>99 Cents Only Stores, LLC,<br><br>Post-Confirmation Debtor[2] | Chapter 11<br><br>Case No. 24-10721 (JKS)<br><br>(Jointly Administered) |

**Objections Due: September 28, 2026 at 4:00 p.m. (ET)**
**Hearing Date: October 14, 2026 at 3:30 p.m. (ET)**

**MOTION OF THE 99 CENTS CREDITORS' LIQUIDATING TRUST FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT REGARDING CERTAIN PROCEEDS PAYABLE UNDER AFFILIATED FM INSURANCE COMPANY POLICY NUMBER 1121993PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

The 99 Cents Creditors' Liquidating Trust (the "Trust") established in the above-captioned chapter 11 case, by and through META Advisors LLC, as the appointed trustee (the "Trustee"), hereby files this motion (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the *Settlement Agreement* attached to the Proposed Order as Exhibit 1 (the "Settlement Agreement") by and between the Trust and Affiliated FM Insurance Company ("Affiliated FM" and together with the Trust, the "Parties"). In support of the Motion, the Trust respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Article

[2] The Post-Confirmation Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is 99 Cents Only Stores LLC (1605). The Post-Confirmation Debtor's mailing address is 99 Cents Creditors' Liquidating Trust, C/O Kelley Drye and Warren LLP, 3 World Trade Center, 68th Floor, New York, NY 10007.

XI of the *Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates, and Granting Related Relief*, dated November 27, 2024 (as subsequently revised and confirmed, the "Plan").[3] Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The legal predicates for the relief requested are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Trust consents to entry of a final order by this Bankruptcy Court in connection with the Motion, if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Chapter 11 Cases

4. On April 8 and April 9, 2024 (as applicable, the "Petition Date"), 99 Cents Only Stores, LLC ("99 Cents") and certain related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the Bankruptcy Court, jointly administered at Case No. 24-10719 (JKS).

5. On January 24, 2025, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order, Approving the Disclosure Statement on a Final Basis, Confirming the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates, and Granting*

[3] Case No. 24-10719, Docket No. 1533. The Plan was subsequently amended per the *Further Revised Joint Chapter 11 Plan of Number Holdings, Inc. and Its Debtor Affiliates*, Case No. 24-10719, Docket No. 1720.

*Related Relief*,[4] which confirmed the Plan. The Plan became effective on January 31, 2025 ("Effective Date"),[5] at which time the Trust was established.

6. The Plan and Confirmation Order provide for the establishment of the Trust on the Effective Date according to the terms and conditions of that certain *Liquidating Trust Agreement and Declaration of Trust* dated January 31, 2025 (the "Trust Agreement"), pursuant to which the Trustee was appointed to administer the Trust.

7. On February 21, 2025, the Bankruptcy Court entered an order closing all chapter 11 cases of the Debtors, except for the chapter 11 case of 99 Cents, which remains pending and administered as Case No. 24-10721 (JKS).[6]

8. With limited exception, the Plan and Confirmation Order provide for the transfer of substantially all of the Debtors' remaining assets to the Trust on the Effective Date, including, without limitation, the proceeds of certain causes of action and insurance policies, such as the Claim (as defined below).[7]

**B. Affiliated FM and the Debtors**

9. Prior to the Petition Date, Affiliated FM provided commercial property and liability insurance to 99 Cents covering, among other things, 99 Cents' interest in the leased premises located at 7239 Spring Mountain Road, Las Vegas, Nevada, 89117 (the "Facility").

10. 99 Cents is the insured under a commercial insurance policy issued by Affiliated FM, Policy No. 1121993 (the "Policy"). The Policy covers the period of September 1, 2023, through September 1, 2024 (the "Policy Period"), and provides coverage to 99 Cents for, among

---

[4] Case No. 24-10719, Docket No. 1733.

[5] Case No. 24-10719, Docket No. 1776.

[6] Case No. 24-10719, Docket No. 1821.

[7] Plan, § IV.C.

other things, losses resulting from all risks of physical loss or damage to approximately 364 locations specified in the Policy. Under the Policy, the total limit of liability is $500,000,000.00, including coverage for Business Interruption Loss, which may be subject to separate sub-limits.

## C. The Incident and Associated Claims

11. On June 1, 2024, certain of the Debtors reported a claim of theft of materials of the premises of property located at 7239 Spring Mountain Road, Las Vegas, Nevada, 89117 (the "Event"), leased by the Debtors. The Debtors sought coverage under Commercial Property Policy No. 1121993 (the "Policy") issued by Affiliated FM, which insures property, as described in the Policy, against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE" subject to all policy terms and conditions.

12. The Debtors notified Affiliated FM of the facts and circumstances surrounding the material theft (the "Damages") and its claim on account of the Damages (the "Claim"). The Claim was assigned claim number 592391 and file adjustment number 847907 by Affiliated FM. The Claim asserted damages for loss or damage at the property and business personal property reportedly caused by the Event.

13. Affiliated FM responded to the Claim and adjusted the Claim in the ordinary course, pursuant to the terms and conditions of the Policy. The Debtors disputed the results of Affiliated FM's adjustment. Since the Effective Date of the Plan, the Trust has been working with Affiliated FM to resolve that dispute.

## D. Proposed Settlement

14. Other than the Debtors, no person or entity has, or has asserted, an interest in the Claim or any proceeds payable on account of the Claim.

15. As the result of good-faith negotiations, the Parties have agreed to compromise and settle the Claim under the Policy in accordance with the terms and conditions set forth in the Settlement Agreement attached to the Proposed Order as Exhibit 1.

16. In summary, Affiliated FM has agreed to pay six hundred thousand dollars ($600,000.00) in net settlement proceeds after application of required deductibles, to resolve the Claim, which payment shall be made to the Trust via wire transfer upon entry of the Proposed Order as full and final payment in satisfaction of the Claim.

17. Pursuant to Section IV.C.2 of the Plan and Section 3.3 of the Trust Agreement, the Trust has exclusive authority to "review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Causes of Action," including pursuit and settlement of the Claim in its discretion, without further order of the Bankruptcy Court or any other party-in-interest. However, at the request of Affiliated FM, the Trust is seeking entry of an order of the Bankruptcy Court approving the Settlement Agreement to formally memorialize the terms of the Parties' compromise. In the interest of expediency and to achieve a final resolution of this dispute, the Trust has agreed to seek Bankruptcy Court approval solely to accommodate Affiliated FM.

## REQUESTED RELIEF

18. By this Motion, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Trust requests entry of an order (a) approving the Settlement Agreement; and (b) authorizing the parties to take any and all actions necessary to effectuate the Settlement Agreement.

## BASIS FOR REQUESTED RELIEF

19. Section 105(a) provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy

Code.[8] Further, pursuant to Bankruptcy Rule 9019(a), the Bankruptcy Court has the authority to "approve a compromise or settlement."[9] To exercise this authority, the Bankruptcy Court must determine that the proposed settlement is "fair and equitable."[10] A starting point in analyzing any proposed settlement is the general policy that "compromises are favored in bankruptcy" to "minimize litigation and expedite the administration of the bankruptcy estate."[11]

## A. **The Settlement Agreement's Terms Are Fair and Equitable**

20. The decision whether to approve a compromise under Bankruptcy Rule 9019 "is committed to the sound discretion of the Bankruptcy Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."[12] Taken together, Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.[13]

21. The Third Circuit has articulated four factors to be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense,

---

[8] Section 105(a) provides, in relevant part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a).

[9] Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion . . . and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

[10] *Will v. Nw. Univ.* (*In re Nutraquest, Inc.),* 434 F.3d 639, 644 (3d Cir. 2006) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

[11] *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that the compromise or settlement of burdensome litigation is encouraged and "generally favored in bankruptcy.").

[12] *In re Aerogroup Int'l, Inc.*, 2019 WL 2120735 (Bankr. D. Del. May 13, 2019); *accord In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

[13] *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (proposed settlement held in best interest of the estate).

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[14] Courts also may consider "the extent that the settlement is truly the product of arms-length bargaining, and not fraud or collusion."[15]

22. A court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible outcome; rather, "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."[16]

23. As set forth below, these factors support approval of the Settlement Agreement.

**i. Probability of Success in Litigation Against Affiliated FM**

24. Pursuant to 99 Cents' insurance policy with Affiliated FM, 99 Cents asserted a claim for losses arising from damages caused by the Incident. Demonstrating that the Claim, if proven, triggers coverage under the Policy would be straightforward. It is undisputed that 99 Cents submitted a "Claim" to Affiliated FM during the applicable "Policy Period." Accordingly, the Claim falls squarely within the scope of coverage provided under the Policy.

25. Given the applicable coverage, the Trust's likelihood of success on the Claim is high. While the scope and calculation of damages remain in dispute, there is no question that 99 Cents is entitled to coverage under the Policy, which expressly insures against "all risks of physical loss or damage" occurring at the Facility as a result of the Incident.

---

[14] *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d at 644 (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor).

[15] *In re Tribune Co*., 464 B.R. 126, 155 (Bankr. D. Del. 2011).

[16] *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)); *In re Capmark Fin. Group, Inc*., 438 B.R. 417, 475-76 (Bankr. D. Del. 2010).

26. The dispute over the scope and calculation of damages is less straightforward. Although the Trust is confident in the merits of its Claim and believes it could obtain a recovery in excess of $1.6 million, the Trust acknowledges that its ultimate success against Affiliated FM is subject to inherent risks and uncertainties. Accordingly, applying a risk-based discount to the claims against Affiliated FM is appropriate, particularly at this early stage, where litigation has not been initiated. Accordingly, settling this for $600,000 falls well within the reasonable range of potential litigation outcomes.[17]

**ii. Complexity, Expense, and Delay of Litigation**

27. Litigating the Claim would be costly and time consuming. The Trust was established to administer, liquidate, and maximize assets for the benefit of its beneficiaries under the Trust Agreement and is entitled to any proceeds of the Policy that may be available to it. However, litigating this claim would entail fact-intensive inquiries requiring extensive expert analysis and testimony and likely would take a significant amount of time to resolve, resulting in substantial direct and indirect costs consuming limited resources that could otherwise be preserved for the benefit of the Trust's beneficiaries. Moreover, addressing Affiliated FM's anticipated defenses would likely further complicate discovery, dispositive motion practice, and any final evidentiary hearing.

**iii. Paramount Interest of Creditors**

28. The Trust believes that the paramount interest of creditors would be served by entering into the Settlement Agreement. The proposed settlement would avoid substantial costs, delays, and risks of litigating against Affiliated FM, while enabling the Trust to liquidate claims

---

[17] *See In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) ("The court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within the range of litigation possibilities.").

for a significant portion of the amount in controversy. Moreover, the Settlement Agreement will result in the prompt recovery of $600,000 for the benefit of the Trust's beneficiaries.

**iv. Arm's-Length and Good-Faith Settlement Negotiations**

29. The Settlement Agreement is the product of extensive arm's-length and good-faith negotiations between the Trust and Affiliated FM. Counsel for both Parties engaged in months of discussions from and after the Effective Date negotiating the issues surrounding the Claim and drafting Settlement Agreement once the material terms were agreed. These endeavors were preceded by the efforts of the Debtors both prior to the Effective Date and prior to the Petition Date from the inception of the Claim. The resulting agreement represents a fair and reasonable compromise that reflects the Parties' considered judgment.

30. In sum, all relevant factors support approval of the Settlement Agreement. The Trust, therefore, submits that the Settlement Agreement should be approved under Rule 9019 as being fair, equitable, and in the best interests of the Debtors' estates and their creditors.

## NOTICE

31. Notice of this Motion has been given to: (i) the U.S. Trustee; (ii) counsel to Affiliated FM; and (iii) all creditors who have filed a renewed request for notice under Bankruptcy Rule 2002. The Trust respectfully submits that, under the circumstances, such notice is sufficient, and that no other or further notice of this Motion is required.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Trust respectfully requests that the Bankruptcy Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, approving the Settlement Agreement and granting such other and further relief as may be just and proper.

Dated: September 14, 2026

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*

Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market St, 17th Floor,
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com
pkeane@pszjlaw.com

-and-

Jason S. Pomerantz (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jspomerantz@pszjlaw.com

*Counsel to the 99 Cents Creditors' Liquidating Trust*