# Exhibit A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>99 Cents Only Stores, LLC,<br>Post-Confirmation Debtor[1] | Chapter 11<br><br>Case No. 24-10721 (JKS)<br><br>**Ref. Docket No.** |

**ORDER GRANTING MOTION OF THE 99 CENTS CREDITORS' LIQUIDATING TRUST (I) APPROVING A SETTLEMENT REGARDING CERTAIN PROCEEDS PAYABLE UNDER AFFILIATED FM INSURANCE COMPANY POLICY NUMBER 1121993 PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the 99 Cents Creditors' Liquidating Trust (the "Trust") seeking entry of an order (this "Order"), pursuant to Bankruptcy Rule 9019, approving the terms of the settlement agreement attached hereto as **Exhibit 1** (the "Settlement Agreement") among the Trust and Affiliated FM Insurance Company ("Affiliated FM, and together with the Trust, the "Parties"), as more fully set forth in the Motion; and this Bankruptcy Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances, and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and the Bankruptcy Court having determined that the legal and factual basis set forth in

[1] The Post-Confirmation Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is 99 Cents Only Stores LLC (1605). The Post-Confirmation Debtor's mailing address is 99 Cents Creditors' Liquidating Trust, C/O Kelley Drye and Warren LLP, 3 World Trade Center, 68th Floor, New York, NY 10007.

the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Bankruptcy Court and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Motion is GRANTED.

2. The Settlement Agreement attached to this Order as **Exhibit 1** is hereby APPROVED.

3. The Parties to the Settlement Agreement are authorized to take all actions necessary to effectuate the relief granted in this Order.

4. The Bankruptcy Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation, implementation, or enforcement of this Order and the Settlement Agreement.

5. This Order and the Settlement Agreement shall become effective immediately upon entry of this Order notwithstanding anything in the Federal Rules of Bankruptcy Procedure or otherwise to the contrary.

# **Exhibit 1**

## **Settlement Agreement**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into by and between: (1) Affiliated FM Insurance Company, "FM Affiliated"); and (2) the 99 Cents Creditors' Liquidating Trust (the "Trustee"), by META Advisors LLC, in its capacity as trustee of the Trust (the "Trustee"). FM Affiliated and the Trust are referred to collectively herein as the "Parties", and each individually as a "Party."

**WHEREAS,** 99 Cents Only Stores ("99 Cents") held a leasehold interest in premises located at 7239 Spring Mountain Road, Las Vegas, Nevada, 89117 (the "Facility"); and

**WHEREAS,** FM Affiliated issued a commercial property insurance policy, No. 1121993, to 99 Cents for the September 1, 2023 to September 1, 2024 Policy Period (the "Policy") with a policy limit of $500,000,000 and covering, among other things, 99 Cents' interest in the Facility; and

**WHEREAS,** following the occurrence of damage to property at the Facility arising from theft of materials on the premises, on or about June 1, 2024 (the "Event"), 99 Cents made a claim under the Policy for the loss or damage at the Facility reportedly caused by the Event. FM Affiliated assigned Claim No. 592391 to the claim (the "Claim"); and

**WHEREAS,** on or about April 8 and April 9, 2024, 99 Cents and certain related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered at Case No. 24-10719 (JKS); and

**WHEREAS,** on November 27, 2024, the Debtors filed their plan and disclosure statement (Case No. 24-10719, D.I. 1533 and 1534); and

**WHEREAS,** on January 24, 2025, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order, Approving the Disclosure Statement on a Final Basis, Confirming the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates, and Granting Related Relief(Case* No. 24-10719, D.I. 1733, the "Confirmation Order") which confirmed the *Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates, and Granting Related Relief(Case* No. 24-10719, D.I. 1533, the "Plan"); and

**WHEREAS,** the Plan became effective on January 31, 2025 (D.I. 1776, the "Plan Effective Date"); and

**WHEREAS,** by order of the Bankruptcy Court dated February 21, 2025, the chapter 11 cases for all of the Debtors other than 99 Cents were closed, and 99 Cents' chapter 11 case remains pending and administered as Case No. 24-10721 (JKS); and

**WHEREAS,** the Plan established the Trust and provided for the transfer of certain of the Debtors' assets to the Trust for the benefit of the Trust beneficiaries, which assets included the proceeds of the Policy (Plan Art. IV.C); and

**WHEREAS,** META Advisors LLC was appointed as Trustee of the Trust under the Plan (Confirmation Order, ¶Q(g)); and

**WHEREAS,** the powers and duties of the Trust and Trustee are governed by the Plan, the Confirmation Order, and that certain *Liquidating Trust Agreement and Declaration of Trust* dated January 31, 2025 (the "Trust Agreement" and, together with the Plan and Confirmation Order, the "Plan Documents"); and

**WHEREAS,** the Parties have agreed to resolve all disputes regarding insurance coverage for the Claim under the Policy; and

**WHEREAS,** the Parties have agreed to settle the disputed Claim for ONE MILLION SIX HUNDRED THOUSAND DOLLARS ($1,600,000.00) (the "Settlement Amount"), subject to the Policy's $1,000,000.00 per occurrence loss deductible, which shall be set off from the Settlement Amount. Accordingly, FM Affiliated has agreed to pay to SIX HUNDRED THOUSAND DOLLARS ($600,000.00) to resolve the Claim; and

**WHEREAS,** under the Plan Documents, the Trust, acting by and through the Trustee, is empowered to settle the disputes regarding insurance coverage for the Claim under the Policy without the need for Bankruptcy Court approval (Plan § IV.H.; Confirmation Order ¶29; Trust Agreement §§ 3.2.2, 3.2.5, 3.2.7, 3.3).

**NOW, THEREFORE,** in consideration of the foregoing recitals, the Settlement Amount, and the covenants and agreements expressed herein, the receipt and sufficiency of which are expressly acknowledged, the Parties agree as follows:

**1. Recitals.** The recitals above and the definitions and terms therein contained shall be deemed part of this Agreement.

**2. Effective Date.** This Agreement shall become effective upon the entry of an order approving the Agreement by the Bankruptcy Court (the "Effective Date").

**3. Payment.**

(a) Within fifteen (15) days of the Effective Date, FM Affiliated will wire the sum of $600,000 to the Trust pursuant to the wire payment information previously provided by the Trust.

(b) The Parties acknowledge and agree that the payment by FM Affiliated set forth in this Paragraph shall reduce the limits of coverage available under the Policy by $600,000.00.

(c) The Parties agree that the Settlement Amount takes into account the Policy's per occurrence loss deductible and that the Policy's per occurrence loss deductible has been satisfied in full through the setoff of $1,000,000.00 from the Settlement Amount and no additional payments or obligations are due by or between any Party hereto on account thereof;

**4. Settlement of Claims.**

(a) In consideration of the promises contained in this Agreement, the receipt and sufficiency of which is acknowledged, and conditioned upon the occurrence of the Effective Date in accordance with Paragraph 2 above and upon the Trust's receipt of the Settlement Amount in accordance with Paragraph 3 above, each Party, on behalf of itself and, to the extent it has authority to bind them, all its respective predecessors, successors, affiliates, subsidiaries, parents, divisions, partnerships, trustees and joint ventures (the "Related Persons"), hereby releases, remises, acquits and forever discharges each other Party and each other Party's Related Persons from any and all claims (including without limitation all rights and claims for fraud or misrepresentation, bad faith, subrogation, breach of statutory duties, or for breach of the covenant of or other alleged duties of good faith and fair dealing in connection therewith), duties, costs, expenses, actions, causes of action, demands, obligations, liabilities, promises, acts, agreements, rights, damages (including, but not limited to, compensatory, contractual, bad faith, punitive, exemplary, punitive, statutory or extra-contractual damages, unfair claims settlement practices, violation of any applicable insurance code provisions or statutes, or any other damages) related to the Claim and hereby consents to the Agreement in full satisfaction and release of any and all claims, losses, attorneys' fees, or other relief of any kind or character, whether known or unknown, suspected or unsuspected, asserted or unasserted, whether at law or in equity, which the Party now has or may hereafter acquire by reason of, in connection with, based on, arising out of, related to, or in any way involving the Claim.

(b) Notwithstanding the foregoing, this Agreement shall not extend to claims for breach of this Agreement or the warranties or representations contained herein.

(c) The releases set forth in Paragraph 4(a) constitute mutual releases by and between the Parties and their respective Related Persons.

**5. Unknown Causes of Action Related to the Claim.** The Parties and their respective Related Persons acknowledge: (i) that they may have sustained damages, expenses and losses in connection with the Claim and the foregoing releases that presently are unknown or unsuspected, and that such damages, expenses and losses, if any, may give rise to additional damages, expenses and losses in the future that are not now anticipated by them; and (ii) that this

Agreement and the foregoing releases have been negotiated and agreed to despite the existence of any such unknown or unsuspected damages, expenses and losses. The Parties and their respective Related Persons, being fully advised, therefore, expressly and intentionally waive any and all rights they may have under any statute limiting releases of unknown claims. This waiver is an essential and material term of this Agreement and without such waiver the Agreement would not have been entered into.

6. **Representations and Warranties.** Each Party represents and warrants that it has not sold, assigned, pledged, transferred or otherwise conveyed any interest in the matters that are the subject of the releases in Paragraph 4(a) of this Agreement. The signatories to this Agreement warrant their authority to agree to its terms on behalf of the Parties as indicated.

7. **No Admission of Liability.** This Agreement is entered into for the sole purpose of resolving the matters addressed herein and neither the execution nor the performance of any of the terms of this Agreement shall constitute or be construed as an admission by any of the Parties of any liability or of insurance coverage, or of any fact or indication that any rights reserved or positions taken by any of the Parties against each other has, or does not have, merit. Neither this Agreement, nor any of its provisions or prior drafts will be offered or received in evidence or referenced or relied on by any Party in any action or proceeding, except in an action or proceeding brought to enforce the terms of this Agreement.

8. **Advice of Counsel.** Each Party hereby represents, agrees and warrants to each other Party: (a) that it has had the opportunity to make and execute this Agreement with the advice and counsel of independently selected legal counsel; (b) that it has not relied upon a representation, disclosure or nondisclosure by any other Party not explicitly provided in this Agreement; and (c) that it has not been coerced or induced to enter into this Agreement by any improper action of any other Party.

9. **Compromise of a Disputed Claim.** It is understood and agreed by the Parties that this settlement is for the compromise of disputed claims and the payment shall not be construed as a waiver, or as an admission of liability on the part of FM Affiliated, whose liability is expressly denied.

10. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts, and in both original form and one or more photocopies, each of which shall be deemed an original, but all of which together shall be deemed to constitute one and the same instrument.

11. **Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the substantive laws of the State of Delaware, without giving effect to choice of law principles.

12. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties respecting the matters addressed herein and supersedes all prior oral and written agreements, and negotiations with respect to the matters provided for herein. This Agreement shall not be modified, altered or discharged except by a writing signed by each of the Parties thereto.

13. **Construction of Agreement.** The language used in this Agreement is language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party. This Agreement shall not be construed against any one Party as drafter and instead shall be construed as if all Parties participated equally in the drafting of the Agreement.

14. **Costs.** The Parties agree that all costs and expenses, including attorneys' fees, shall be paid by the party incurring same.

15. **Severability.** If any portion of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, such portion shall be deemed severed from this Agreement and the remaining parts shall remain in full force and effect as if the invalid or unenforceable provision had not been a part of this Agreement.

16. **Agreement Not to Submit Additional Claims.** As part of this Agreement, the Trust represents and agrees that it individually, or collectively with any other party or entity, will not submit any additional claims under the Policy for damage at the Facility or loss related to the Claim. Nothing in this Agreement in any way impacts the Trust's ability to submit additional claims relating to the Event under any other applicable policy, or the Trust's ability to recover on any claims relating to the Event already submitted by the Debtors or the Trust under other policies.

**IN WITNESS WHEREOF,** the Parties agree to be bound by the terms of this Agreement and, in order to signify such agreement, have executed this Agreement as of the last date appearing below.

*SIGNATURES ON SEPARATE PAGE*

**Affiliated FM Insurance Company**

By: ____________________________

Printed Name: April Gray ___________

Title: Vice President, LA Operations Claims

Manager____________________________

Date: _August 27, 2026___________________________

**The 99 Cents Creditors' Liquidating Trust**
by META Advisors LLC, solely in its
capacity as Trustee

By: ____________________________

Printed Name: _Dana P. Kane________

Title:_Chief Compliance Officer,_____
______META Advisors LLC__________

Date: _August 25, 2026_____________